UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| RONALD FIELDS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL NO. 1:19cv25 |
| | ) |
| KYLE GRIFFITH and | ) |
| CHIEF OF POLICE, CITY OF MARION, | ) |
| | ) |
| Defendants. | ) |

OPINION AND ORDER

This matter is before the court on a motion for summary judgment filed by the defendants, Kyle Griffith ("Officer Griffith") and the Chief of Police, City of Marion ("Chief"), on March 23, 2020. Plaintiff, Ronald Fields, *pro se*, ("Fields"), has not filed a response to the motion. The record shows that Fields was given notice of the motion as required by Local Rule 56-1(f). Fields filed receipt of the notice on April 13, 2020. He also confirmed receipt of the notice in a telephonic status conference held on March 31, 2020 before Magistrate Judge Susan L. Collins.

For the following reasons, the motion for summary judgment will be granted.

Standard of Review

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Not every dispute between the parties makes summary judgment inappropriate;

"[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010).

Under Rule 56, the movant has the initial burden of establishing that a trial is not necessary. *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 627 (7th Cir. 2014). "That burden may be discharged by showing . . . that there is an absence of evidence to support the nonmoving party's case." *Id*. (citation and internal quotation marks omitted). The nonmovant "must go beyond the pleadings (*e.g.*, produce affidavits, depositions, answers to interrogatories, or admissions on file) to demonstrate that there is evidence upon which a jury could properly proceed to find a verdict in [its] favor." *Id*. (citation and internal quotation marks omitted). "The existence of a mere scintilla of evidence, however, is insufficient to fulfill this requirement." *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). "[S]peculation and conjecture" also cannot defeat a motion for summary judgment. *Cooney v. Casady*, 735 F.3d 514, 519 (7th Cir. 2013). In addition, not all factual disputes will preclude the entry of summary judgment, only those that "could affect the outcome of the suit under governing law." *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001) (citation omitted). A party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in his or her own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). If the nonmoving party does not establish the existence of an essential element on which that party bears the burden of

proof at trial, summary judgment is proper. *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006). Summary judgment "is the put up or shut up moment in a lawsuit ...." *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008).

Discussion

The defendants have provided the following facts which are undisputed by Fields and are supported by the evidence and record.

On November 2, 2018 at approximately 10:00 p.m., Officer Griffith observed a motor vehicle operating without a functional license plate light. [Probable Cause Aff. at p. 4; Trial Transcript at p. 107, l. 3-21.] He stopped the vehicle and asked the man driving the vehicle for his driver's license. [PC Aff. at p. 4; Tr. at p. 107, l. 18-21; p. 108, l. 19-25.] The man did not have a driver's license, so Officer Griffith asked the man for his name, date of birth, and social security number. [P.C. Aff. at p. 4; Tr. at p. 108, l. 19 – p. 109, l. 9; p. 111, l. 19-21.] The man said his name was "Demetrius Sanders" but when he gave that name, he did not make eye contact with Officer Griffith and his voice trailed off which caused Officer Griffith to think that the man was not "confident in his words." [PC Aff. at p. 4; Tr. at p. 108, l. 19 – p. 109, l. 16.] The man claimed that he did not know his social security number, gave evasive answers about his date of birth, and did not provide information sufficient to permit Officer Griffith to confirm his identity. [P.C. Aff. at p. 4; Tr. at p. 108, l. 24 – p. 113, l. 15.]

When asked his date of birth, the man did not respond by providing a day, month, and year which, in Officer Griffith's experience, was how most people answered the question. [PC Aff. at p. 4; Tr. at p. 109, l. 17-22.] Instead, said the man said he was "born in the '70's." [P.C. Aff. at p. 4; Tr. at p. 109, l. 17-22.] He also said that he was 45 years old, but Officer Griffith did

3

the math and knew that if the man had been born in 1970, he would have been 48 years old. [PC Aff. at p. 4; Tr. at p. 113, l. 5-15.] Eventually, the man said his date of birth was June 10, 1970, but when the dispatch operator ran the name "Demetrius Sanders" with a date of birth of June 10, 1970 in the Indiana Bureau of Motor Vehicles database, there was no such person. [PC Aff. at p. 4; Tr. at p. 111, l. 2-18.]

Officer Griffith became suspicious that the man was not being honest about his identity and had something to hide. [PC Aff. at p. 4; Tr. at p. 112, l. 1 – 7.] Officer Griffith told the man that if he could not confirm his identity, he would be arrested and taken to jail. [P.C. Aff. at p. 4; Tr. at p. 112, l. 9-21.] The man remained uncooperative. [P.C. Aff. at p. 4; Tr. at p. 113, l. 16-23.] Officer Griffith thus arrested him and had him transported to the Grant County Jail. [*Id.*] At the jail, the man was identified as Ronald Fields. [PC. Aff. at p. 4; Tr. at p. 113, l. 24 – p. 114, l. 25.] Once his identity was known, Officer Griffith then discovered that: (1) Fields had been adjudicated as a habitual traffic violator ("HVT"), which meant that a court had ordered him not to drive a motor vehicle in Indiana for the remainder of his life; and (2) there was an active warrant for his arrest. [PC Aff. at p. 4; Tr at p. 116, l. 4 – 24; 118, l. 7 – 13.] Officer Griffith decided to recommend to the Grant County Prosecutor that Fields be charged with the crimes of "HTV-Life and Refusal to Identify along with the warrant." [PC Aff. at p. 4.] Fields was processed at the jail, posted bond, and was released shortly before midnight. [Tr. at Defendants Exhibit B (receipt for bond payment showing that his bond payment was made on November 2, 2018)]

On November 29, 2018, the State of Indiana filed an Affidavit for Probable Cause seeking a warrant to arrest Fields for the crimes referenced in Officer Griffith's written case

4

report prepared the night of Fields's arrest, the contents of which Officer Griffith affirmed under oath were true and adopted as his probable cause affidavit. [P.C. Aff. at p. 1-4.] A Grant County judge found probable cause, and Fields was formally charged with: (1) Operating a Motor Vehicle When Driving Privileges Have Been Revoked for Life (a Level 5 felony); and (2) Refusal to Provide Information or Driver's License (a Class C misdemeanor). [Information.]

On January 28, 2019, Fields filed the present action. He named both Officer Griffith and the Chief of the Marion Police Department as defendants. [Docket No. 4-2, Civil Compl.] He alleged that Officer Griffith had lacked probable cause to arrest him because Officer Griffith: (1) did not issue him a ticket for the traffic stop; (2) failed to read him his Miranda rights: (3) and never showed him a warrant or any "legitimare[sic] legal documentation" to justify his arrest. [*Id*. at p. 3.] Fields did not plead any facts explaining why he sued the Chief. [*Id*.] Fields has brought this action pursuant to Section 1983 claiming violations of his constitutional rights. He has also alleged state law false arrest/false imprisonment claims.

On April 9, 2019, Fields's criminal case was tried to a twelve-person jury in Grant County, Indiana. [Tr. at p. 103 (cover page of trial transcript reflecting date of trial); p. 212, l. 25 – p. 214, l. 4 (polling of the twelve person jury as to their verdict); *Fields v. State*, Indiana Court of Appeals Memorandum Decision 19A-1260 (filed Dec. 9, 2019) at p. 5 (observing that Fields's case "proceeded to a jury trial as scheduled on April 8, 2019.").] The jury found Fields guilty of both crimes as charged in the Information. [Tr. at p. 212, l. 19 – 214, l. 22; *see also*, *Fields*, Indiana Court of Appeals Memorandum Decision 19A-1260 at p. 6 (observing that "[a]t the conclusion of trial, the jury found Fields guilty as charged.").]

On May 2, 2019, this Court held the initial pretrial conference in this case. [Docket No.

32, Entry on May 2, 2019 Telephonic Hearing.] At the time of the pretrial, Fields had been convicted, but he had not yet been sentenced, so his criminal case was not yet resolved. But Fields had already decided that he would be appealing his conviction, and so informed the Court. The Court thus stayed this action pending Fields's appeal and the final resolution of his criminal case. [*Id*.]

Fields was sentenced on May 9, 2019, and an Order of Sentence was issued on May 14, 2019. [Abstract of Judgment at p. 1 (reflecting date of sentencing); Order of Sentence at p. 3 (reflecting date of issuance).] Fields then appealed his conviction to the Indiana Court of Appeals. [Fields, Indiana Court of Appeals Memorandum Decision 19A-1260.]

On December 9, 2019, the Indiana Court of Appeals affirmed Fields's conviction. [*Fields*, Indiana Court of Appeals Memorandum Decision 19A-1260.] Coincidentally, this Court had scheduled a telephonic status conference for December 11, 2019. [Docket No. 52, Entry on Dec. 11, 2019 Status Conference.] At the status conference, Fields told the Court that he planned to take a further appeal to the Indiana Supreme Court. The Court thus continued the stay of this case pending resolution of Fields's further appeal. [*Id*.]

Under Indiana Appellate Rule 57(C), Fields's petition for transfer to the Indiana Supreme Court was due on or before January 23, 2020. [Ind. Appellate Rule 57(C ) (allowing 45 days from the date of a ruling by the Indiana Court of Appeals to file a petition for transfer).] The Indiana state court's electronic docket, available at mycase.IN.gov, reflects that Fields did not file a petition for transfer to the Indiana Supreme Court. [Chronological Case Summary for *Ronnie D. Fields v. State of Indiana*, Indiana Court of Appeals Cause No. 19A-CR-01260.] Because Fields did not take a further appeal to the Indiana Supreme Court, his criminal conviction has

become final and defendants' summary judgment motion is ripe for consideration.

In support of summary judgment, the defendants argue that Field's federal constitutional claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). In *Heck*, the United States Supreme Court observed that "civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments." *Heck*, 512 U.S. at 486. It thus established the rule that a plaintiff may not proceed with a lawsuit brought under § 1983 if success on the federal constitutional claims would necessarily imply the invalidity of the plaintiff's underlying criminal conviction. *Id.* at 486-87.

A criminal conviction does not necessarily *Heck*-bar a Fourth Amendment false arrest/ false imprisonment claim. The Seventh Circuit has recognized that probable cause to arrest and evidence of guilt are two distinct issues. *Reynolds v. Jamison*, 488 F.3d 756, 766 (7th Cir. 2007). The former involves whether the arresting officer had sufficient evidence at the time of the arrest to warrant a reasonable person to believe that the defendant had committed a crime. *Id*; *Lang v. City of Round Lake Park*, 87 F. Supp. 2d 835, 843 (N.D. Ill. 2000). The latter involves whether there is sufficient evidence at the time of the conviction (by trial or guilty plea) to demonstrate the defendant's guilt beyond a reasonable doubt. *Id*.

However, when there is no difference between the evidence utilized to establish probable cause for the arrest and the evidence utilized to establish guilt, "proof of the crime is *ipso facto* proof of probable cause." *Patterson v. Leydn*, 947 F. Supp. 1211, 1217 (N.D. Ill. 1996) (discussing *Currier v. Baldridge*, 914 F.2d 992 (7th Cir. 1990); *Lang*, 87 F. Supp. 2d at 843 (discussing *Currier*); *Allen v. Elliott*, No. 1:15-cv-1420-JMS-DML, 2017 WL 3421981 at *3 (S.D. Ind. Aug. 9, 2017 (citing *Patterson* and *Lang* with approval). The conviction constitutes

7

such proof because a finding of probable cause is an absolute bar to a § 1983 claim for false arrest/false imprisonment, and when a conviction is based on the same evidence that was used to establish probable cause, the § 1983 plaintiff cannot prevail without necessarily undermining his criminal conviction. *Reynolds*, 488 F.3d at 765 ("A finding of probable cause absolutely bars a claim for false arrest under § 1983."); *Puch v. Village of Glenwood*, No. 05-C-1114, 2012 WL 2502688, at *4 (N.D. Ill. June 27, 2012) (discussing *Currier* and *Heck*).

In the present case, the evidence used to establish probable cause for Fields's arrest was the same evidence utilized to establish his guilt. In fact, one need only compare the facts that Officer Griffith wrote in his case report, which Officer Griffith swore under oath were true and correct and served as his probable cause affidavit, with Officer Griffith's sworn testimony at Fields's criminal trial to see that no additional evidence was gathered after Fields's arrest and no different testimony was admitted at trial to support Fields's conviction on the refusal to identify charge, which was the crime for which Fields was initially placed under arrest. [*Compare* PC Aff. at p. 1-4 and Tr. at p. 107 – 113, l. 23.]

If Fields's constitutional claim was allowed to go forward, a federal jury would be required to choose between: (1) Fields's claim that Officer Griffith lacked probable cause to think that Fields had committed any crimes; and (2) the Grant County jury's determination affirmed by the Indiana Court of Appeals that Fields had, in fact, committed the very crimes for which Officer Griffith arrested him, including the crime of failing to identify himself to a police officer. This is exactly what *Heck* is meant to prevent.

Because Fields cannot prevail on his federal constitutional claims without implying that he was wrongly convicted, his federal constitutional claims are *Heck*-barred and fail as a matter

8

of law. Thus, summary judgment must be granted in favor of the defendants on Fields's federal claims.

Although *Heck* applies only to federal constitutional claims, Indiana law bars false arrest/false imprisonment claims brought as state law torts for similar reasons. The bar under Indiana law, however, is more generous than the bar afforded by *Heck*. Under Indiana law, a criminal conviction is deemed to retroactively establish probable cause for the underlying arrest and bars recovery in an action for false arrest or false imprisonment. *Drake v. Lawrence*, 524 N.E.2d 337, 340 at n.3 (Ind. Ct. App 1988); *Borders v. City of Elkhart*, 928 N.E.2d 651 at *4, n.5 (citing *Drake* and observing that "a conviction is deemed to retroactively establish probable cause and bars recovery in an action for false arrest or false imprisonment"). Unlike *Heck*, Indiana law does not make the bar contingent on the evidence used to establish probable cause being the same as evidence use to establish his guilt. *Id*. Of course, as discussed above, the evidence that supported probable cause for Fields's arrest was the same evidence that supported his conviction.

Because Fields's conviction bars his state law false arrest/false imprisonment claims, his state law claims fail as a matter of law, and summary judgment must also be granted on his state law claims.

## Conclusion

On the basis of the foregoing, defendants' motion for summary judgment [DE 53] is hereby GRANTED.

Entered: May 20, 2020.

s/ William C. Lee
William C. Lee, Judge
United States District Court
